Rose DINGER, Individually and as Representative of the Estate of Aaron J. Dinger, and as Next Friend of Craig M. Dinger, Minor, Crystal A. Dinger St. Amant, and Karen Dinger

v.

HORNBECK OFFSHORE SERVICES, INC., et al.

Civil Action No. G–95–759.

United States District Court, S.D. Texas, Galveston Division.

July 9, 1997.

Ernest H. Cannon, Ernest Cannon & Associates, Houston, TX, for Rose Dinger, Crystal A. Dinger St. Amant, Karen Dinger.

Christopher L. Evans, Meyer Orlando and Evans, Houston, TX, for Hornbeck Offshore Services, Inc., Hornbeck Offshore OP, Hornbeck Offshore, Inc., Tidewater Inc., Tidewater Marine Inc., Point Marine, Inc.

Dorothea L. Vidal, McGlinchey Stafford Lang, Dallas, TX, David E. Harrell, Jr., McGlinchey Stafford Lang, Houston, TX, for Halter Marine Group, Inc.

Darnell Bludworth, McGlinchey Stafford Lang, New Orleans, LA, Dorothea L. Vidal, McGlinchey Stafford Lang, Dallas, TX, David E. Harrell, Jr., McGlinchey Stafford Lang, Houston, TX, David R. Clouston, McGlinchey Stafford, Dallas, TX, for Trinity Industries, Trinity Industries Inc.

Joseph Ralph White, Christopher E. Carey, Montgomery Barnett Brown Read Hammond and Mintz, New Orleans, LA, for Petrol Boat Co., Petrol Marine Corp., Portal Corp., Portal Energy Corp.

George William Vie, III, Mills Shirley Eckel and Bassett, Galveston, TX, Gary Michael Pritchard, Charles W. Seymore & Associates, Houston, TX, Joseph H. Guffey, Jeanine R. Bermel, Husch and Eppenberger, St. Louis, MO, for Quincy Compressor Division of Coltec Industries, Inc., Coltec Industries Inc.

Peter Glenn Myer, U.S. Dept. of Justice, Civil Division, Washington, DC, for U.S., U.S. Coast Guard.

### ORDER DENYING MOTION FOR SUMMARY JUDGMENT

KENT, District Judge.

This is an admiralty tort action arising from the death of Aaron J. Dinger. Now before the Court is Third-party Defendant United States of America's Motion for Summary Judgment of March 24, 1997. For the reasons set forth below, the Motion is **DENIED**.

Plaintiffs' decedent, Aaron J. Dinger, was employed by a predecessor of Defendant Tidewater Marine, Inc. ("Tidewater") as the chief engineer aboard the M/V H.O.S. GUN BOW. On September 13, 1995, an explosion in the ship's engine room killed Mr. Dinger. Defendant Tidewater alleges that Mr. Dinger closed the shut-off valves to the ship's two compressed air receiving tanks and then turned on both compressors. Each receiving tank has a pressure-relief valve that opens up if the pressure in the tank gets too high to prevent the tanks from becoming overpressurized. Defendant alleges that because Mr. Dinger closed the valves to the tanks, the compressed air generated by the compressors could not go into the pressure tanks where the relief valves were located. The compressed air allegedly had no where to go except into the piping that linked the compressors and the receiving tanks. The pressure and heat in the piping apparently built up to a point that caused the piping to explode. Plaintiffs allege, *inter alia*, that there should have been a pressure-relief valve in the piping between the air compressors and the first-stop valve, which is the first valve

between the compressors and the receiving tanks that shuts off the flow of air to the tanks. Plaintiffs specifically allege that by not having a relief valve in the piping, Defendant Tidewater violated 46 C.F.R. § 56.07–10(b). That regulation provides as follows:

*Relief valves (modifies 101.2).* (1) Every system which may be exposed to pressures higher than the system's maximum allowable working pressure shall be safeguarded by appropriate relief devices. (See § 52.01–3 of this subchapter for definitions.) Relief valves are required at pump discharges except for centrifugal pumps so designed and applied that a pressure in excess of the maximum allowable pressure for the system cannot be developed.

46 C.F.R. § 56.07–10(b) (1996). Plaintiffs contend that this regulation required a relief valve in the piping between the compressor and the first-stop valve aboard the M/V H.O.S. GUN BOW. Defendant disputes Plaintiffs' contention that a relief valve was required in the piping and maintain that there was no violation of the regulation.

Defendant Tidewater nonetheless filed a Third-party Complaint against the United States of America for negligent inspection by the Coast Guard in case the Court finds that Defendant violated the regulation in question. In its Third-party Complaint, Defendant contends that the Coast Guard was negligent with respect to its inspection of the M/V H.O.S. GUN BOW and that its negligence was a proximate or producing cause of Plaintiffs' damages. Based on this claim, Defendant Tidewater seeks contribution and/or indemnity from the United States for any amounts that it may have to pay Plaintiffs. Defendant's negligent inspection claims against the Coast Guard arises out of the alleged fact that at no time between 1980 and December, 1995 did any Coast Guard inspector require a relief valve to be located in the piping between the compressor and the first-stop valve. More specifically, the GUN BOW was inspected on June 20, 1995, less than two months before the explosion that killed Mr. Dinger, by Chief Warrant Officer (4) Ronald P. Hill of the Coast Guard's Morgan City, Louisiana Marine Inspection Office. Mr. Hill inspected the pressure system on the ship and did not cite the ship in any way for not having a relief valve in the air system. Mr. Hill did not cite the vessel for not having a relief valve in the piping between the compressors and the first-stop valve because he did not check for a relief valve in that area. At the time of the inspection, Mr. Hill was unaware that the regulation found at 46 C.F.R. § 56.07–10(b) even existed. Mr. Hill indicated in his deposition that now that he is aware of the regulation, he looks for relief valves in the piping between compressors and first-stop valves and tests the valves on vessels he inspects.

In its Third-party Complaint, Defendant Tidewater denies that the regulation in question requires a relief valve in the piping but asserts that if it does, the Coast Guard was negligent in its inspection of the GUN BOW and is liable for contribution or indemnity. Third-party Defendant United States seeks summary judgment on Defendant Tidewater's third-party claim against it, asserting that the Coast Guard's inspection process is a discretionary function for which sovereign immunity is not waived under the Federal Torts Claim Act ("FTCA") and the Suits in Admiralty Act ("SAA"), which are the statutes under which Defendant Tidewater seeks contribution.

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). Issues of material fact are genuine only if they require resolution by a trier of fact. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In other words, the Court must accept the evidence of the nonmoving party and draw all justifiable inferences in favor of that party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 585–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). Determining credibility, weighing evidence, and drawing reasonable inferences are left to the trier of fact. *Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513.

The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record]

which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *see also* Fed.R.Civ.P. 56(c). The burden then shifts to the nonmoving party to establish the existence of a genuine issue for trial. *Matsushita,* 475 U.S. at 585–87, 106 S.Ct. at 1355–56; *Wise v. E.I. DuPont De Nemours & Co.,* 58 F.3d 193, 195 (5th Cir.1995). To meet this burden, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts" by "com[ing] forward with 'specific facts showing that there is a genuine issue for trial.' " *Matsushita,* 475 U.S. at 586–87, 106 S.Ct. at 1355–56 (quoting Fed.R.Civ.P. 56(e)). Summary judgment should be granted only if the evidence indicates that a reasonable fact-finder could not find in favor of the nonmoving party. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510; *see also Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356.

■ Third-party Defendant United States seeks summary judgment on Defendant Tidewater's claims against it for contribution and/or indemnity on the grounds that the Coast Guard's inspection process is a discretionary function for which sovereign immunity is not waived under the FTCA and the SAA. The discretionary function exception is set forth in the FTCA and limits the United States' waiver of sovereign immunity under the Act by providing that the waiver will not apply to claims

> based on the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a). The SAA does not contain an explicit discretionary function exception to its waiver of sovereign immunity, but the Fifth Circuit recognizes that the FTCA's exception is implicit in suits brought by private persons against the United States under

the SAA. *Baldassaro v. United States,* 64 F.3d 206, 208 (5th Cir.1995) (citing *Wiggins v. United States Through Dep't of Army,* 799 F.2d 962, 966 (5th Cir.1986)), *cert. denied,* —— U.S. ——, 116 S.Ct. 1823, 134 L.Ed.2d 929 (1996).

■ Two requirements must be met for the discretionary function exception to apply. First, the challenged act must involve an element of judgment or choice. *United States v. Gaubert,* 499 U.S. 315, 319–20, 111 S.Ct. 1267, 1272, 113 L.Ed.2d 335 (1991). In other words, the conduct must not involve mandatory compliance with a particular federal statute, regulation, or policy. *Id.* Second, the challenged conduct must be of the type that the discretionary function exception was designed to shield. *Id.* The exception was designed to shield actions "based on considerations of public policy." *Gaubert,* 499 U.S. at 323, 111 S.Ct. at 1274.

■ The Court finds that the discretionary function exception does not apply to the Coast Guard's conduct in this case because the first element of the *Gaubert* test is not met. The Coast Guard's conduct, specifically Mr. Hill's inspection of the GUN BOW on June 20, 1995, did not involve an element of choice or judgment. Mr. Hill admitted that he was unaware of the regulation that Plaintiffs' claim required a relief valve in the piping.[1] If Mr. Hill was unaware of the regulation, he could make no choice or judgment as to whether the regulation required a relief valve, whether to inspect the piping for a relief valve, or whether Defendant Tidewater was in violation of the regulation. There can be no element of discretion or choice when there is nothing from which to choose. Third-party Defendant United States claims that the Coast Guard cannot be liable for failing to find every violation of a regulation in its inspection. That may well be true, but it is a very different situation when the Coast Guard inspector does not even know about a regulation when he inspects a vessel. An

---

1. The Court at this time makes no finding as to whether 46 U.S.C. § 56.01–10(b) applies in this case and requires a relief valve to be located in the piping between the compressors and the first-stop valve. From a cursory reading of the regulation, it seems to require no such valve. The

Court's ruling today only affects the Coast Guard's liability to the extent that the regulation is later found applicable in this case and Defendant Tidewater is found to have violated the regulation by not having a relief valve in the piping.

inspector cannot find or fail to find a violation of a regulation he is not even aware of. The Court finds that the inspector's failure to know about a potentially applicable regulation takes the inspector's conduct out of the discretionary function exception. It remains to be determined at trial whether this failure constitutes negligence on the part of the United States, but the Court is inclined to find that a fact question in regard thereto certainly exists.

The Court realizes that inspection of vessels is a daunting task and that not every nook and cranny of a ship can be inspected. The implication of the facts of this case, however, is terrifying. The Coast Guard is charged with ensuring the safety of vessels and their compliance with the law. When the Coast Guard does not even know what the law is or what the safety requirements are, it is creating a manifestly (and in this case fatally) false impression that the vessels it inspects are safe. The Court finds this scenario very disturbing and cannot hold the Coast Guard immune from liability based on the discretionary function exception, even though it may, after trial, be ultimately found not liable.

For the reasons stated above, Third-party Defendant United States of America's Motion for Summary Judgment is **DENIED**. The parties are **ORDERED** to bear their own taxable costs and expenses incurred herein to date. The parties are also instructed to file nothing further on this issue in this Court, including motions to reconsider and the like unless compelling evidence warrants such a reconsideration. Instead, the parties are instructed to seek any further relief to which they feel themselves entitled in the United States Court of Appeals for the Fifth Circuit, as may be appropriate in due course.

IT IS SO ORDERED.